## Case No. 13,860.

### THAMES v. MILLER.

[2 Woods, 564.] [1]

Circuit Court, M. D. Alabama.    Jan., 1873.

BANKRUPTCY—SALE BY SHERIFF AFTER ADJUDICATION—EFFECT OF ADJUDICATION—SETTING SHERIFF'S SALE ASIDE.

1. Where a judgment was a lien on the real estate of the judgment debtor, and an execution had been levied thereon, and the property advertised for sale, but before sale the judgment debtor was adjudicated a bankrupt, the sheriff, unless restrained by the bankrupt court, might well proceed to sell, and his sale would be valid.

2. The naked fact, that the judgment debtor had been adjudicated a bankrupt before the sale, did not of itself operate as an injunction to restrain the sale.

3. When, however, real estate was first seized in execution by the sheriff, long after the bankruptcy, and sold for little more than one-tenth its value, the sale was set aside, and the property turned over to the assignee.

4. When several execution creditors, for the purpose of preventing a sacrifice of the property of their debtor, enter into an agreement to bid off the property, and under this agreement it is bid off for its full value, the sale will not be set aside on account of such agreement.

[5. Cited in Re Beck, 31 Fed. 555, to the point that application for review must be made within in a reasonable time.]

[In review of the action of the district court of the United States for the Middle district of Alabama.]

In bankruptcy.

E. W. Pettus, for petitioners.

John T. Morgan and W. L. Bragg, for defendants.

WOODS, Circuit Judge. This is a petition filed under the second section of the bankrupt act, seeking a review and reversal of an order of the district court for the Middle district of Alabama, sitting in bankruptcy. From the pleadings and evidence I find the following facts: On the 12th of November, 1866, one Samuel McKirral recovered a judgment against Edward A. Blunt, in Perry county circuit court, for $2,227 and costs. On the same day, in the same court, M. Morgan & Sons recovered a judgment against the same Edward A. Blunt for $3,201.23 and costs. Soon after the rendition of these judgments, executions were issued upon them, and thereafter, from time to time, executions were issued on the judgments according to law, so as to preserve

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

their lien on the property of the defendant in execution within the county of Perry. On the 28th of November, 1868, pluries executions were issued on these judgments, and on that day placed in the hands of the sheriff of Perry county, who, on the same day, levied the same upon certain real estate, the property of the judgment debtor, situate in and near the town of Marion, in the county of Perry. On the 8th of November, 1867, C. E. Thames & Co., who are among the petitioners in this case, also recovered a judgment in Perry circuit court against Blunt for $7,651.66, on which judgment an execution was issued on the 16th day of December, 1867, and levied on certain real estate of the defendant in execution, situate in Perry county, and returned by the sheriff without further proceedings; and afterwards other executions were, from time to time, issued and returned by the sheriff, so that at the time of the sale, hereinafter mentioned, the said execution was a lien on said real estate. On the 7th and 8th of November, 1867, other parties, some of whom are petitioners in this case, and others defendants, also recovered judgments in the same court against Blunt, on which executions were, from time to time, so issued and returned, that at and before the date of sale, hereafter mentioned, the judgments were a lien upon the lands and personal property of Blunt within the county of Perry. Immediately after the 28th of November, 1868, the date when the sheriff of Perry county levied the executions of McKirral and Morgan & Sons, and before the 9th day of December, 1868, the sheriff advertised for sale the property so levied on to satisfy said executions, the sale to take place on the 4th of January, 1869. Before the day of sale, to wit, on the 2d of January, 1869, certain judgment creditors of Blunt, to wit, Francis A. Bates, who had become the assignee and owner of the judgments of McKirral and Morgan & Sons, C. E. Thames & Co., Mary J. Williams, Martha Benson, Duryee & Jaquess, John Barron, Cyrus Billingsly, Thomas S. Wallace and Oscar Cheeseman, all of whose judgments were claimed to be liens on the real estate of Blunt, in Perry county, entered into a contract in writing, which recited that the real estate of Blunt had been levied on to satisfy sundry executions in favor of said creditors, and that without concert of action the property might be sacrificed, and the creditors realize but little on their debts. In order, therefore, to prevent a sacrifice, and to collect as much as possible on their debts, they mutually agreed to buy the real estate so levied on, on the 4th of January, 1869, and to hold the same until such time as they, or a majority of them, might think best to sell the same, and carry the proceeds into the circuit court of the county of Perry, there to be distributed under the order and direction of the court, according to the respective priori-

ties of the parties, and without prejudice to the rights of any one. On the 4th of January, 1869, the sheriff struck off the real estate advertised to be sold under the executions of McKirral and Morgan & Sons, in parcels, to several of the parties who signed this agreement, and among the purchasers were the petitioners in this proceeding. The aggregate amount for which the several parcels were sold was $19,685 in cash, which sum was paid by the purchasers to the sheriff, who, after deducting the costs, applied the net proceeds of the sale to the judgment liens in the order of their priority, crediting the same upon the executions, whereby the money so paid, less the costs, immediately found its way back to the hands of the parties from whom it had been received. The sum for which the property sold was, according to the weight of the testimony, as much as it would at that time reasonably bring in cash, and more than it would sell for now. The judgments to which the proceeds were applied were, with the exception of a mortgage lien, the first and best liens upon the property sold, and it was sold subject to the mortgage. The liens upon the property far exceeded what the property was worth. In the meantime, after the levy by the sheriff and his advertisement of sale, and before the sale, to wit, on the 9th of December, 1868, Blunt, the defendant in execution, filed his petition in the district court for the Middle district of Alabama, to be adjudged a bankrupt. He was adjudicated a bankrupt on the 14th of December, 1868, and on March 27, 1869, William Miller was appointed his assignee in bankruptcy, and the 16th of March, 1871, said Bailey was appointed associate assignee of said Miller. On the 18th of March, 1871, the assignees filed their petition in the bankrupt court, praying that said sheriff's sale be set aside; that the purchasers be required to account for the rents of the property; and for an order of the bankrupt court authorizing them to sell the property free of incumbrance. A full answer to this petition was filed by the defendants on May 23, 1871, and the bankrupt court referred the case to the register in bankruptcy, to take testimony and report his opinion upon the facts. Upon the coming in of the register's report, the court made an order in conformity with the prayer of the petition. To review and reverse this order is the object of this petition of review.

In passing upon the case, I shall only notice two of the questions presented, namely: 1. Had the sheriff of Perry county a right, under the facts as above detailed, to sell the property in question, and would his sale and deed, in the absence of fraud, make a good title? And, 2. Was the arrangement between the creditors to buy at the sheriff's sale a fraudulent one? Other questions have been argued by counsel, but they have been so often passed upon by the court, as stated

during the argument, that I shall not consume time by noticing them further.

The first question to be passed upon must, in my opinion, be answered in the affirmative. The judgments upon which the property was sold had for years been liens upon the property, the sheriff had levied his executions upon it, and had advertised it for sale before the filing of the petition in bankruptcy. Now, unless the naked fact of the filing of the petition by Blunt, to be adjudicated a bankrupt, operates as an injunction on the sheriff, restraining him from further proceedings under the execution, and rendering such proceedings void, then the sale by the sheriff is a good one. I do not think such is the effect of the filing of the bankrupt's petition. Goddard v. Weaver [Case No. 5,495].

It has been held that the bankrupt court has the right by injunction to restrain a sale by a sheriff or other officer of the law, of property surrendered by the bankrupt. Irving v. Hughes [Case No. 7,076]; Jones v. Leach [Id. 7,475]; Pennington v. Sale [Id. 10,939]; Pennington v. Lowenstein [Id. 10,-938]; In re Bowie [Id. 1,728]; In re Schnepf [Id. 12,471]. But it by no means follows from this proposition that if the bankrupt court does not intervene, and the sheriff proceeds without the interference of that court, his proceedings are void, and the purchaser takes no title. The contrary has been expressly held. Thus, in Re Fuller [Id. 5,148], the court says: "The judgment against the bankrupt having by lapse of time become valid, so far as the bankrupt act [of 1867 (14 Stat. 517)] is concerned, Smith has acquired a lien thereby upon the real estate in question. Upon the application of parties interested, this court has jurisdiction to ascertain and liquidate this lien (Bank Act, § 1), and while doing so, to enjoin Smith from enforcing the same by execution out of the state court. But after the process of the state court has been executed and the property sold thereon, it is too late for this court to interfere. The purchaser at such sale acquires a good title; and this is so even if the judgment was fraudulent, provided the purchaser was an innocent one. For this reason, as well as upon general principles, this court could not set aside the sale upon the process of the state court, and order the property resold, however apparent it may be that it was sold much below its real value."

So in Re Bernstein [Case No. 1,350]. which in its facts very much resembled the case on trial, it was held, that where the property of the bankrupt has been sold by the sheriff under an execution issued on a valid judgment in a state court, an injunction will not be granted. The court says: "In this case the property has been sold, and the proceeds of it are in the hands of the sheriff. No advantage can result from requiring the money to be paid into this court with a view to its application by this court in satisfaction of the lien on the property. An order will be entered allowing the sheriff to apply the proceeds of the sale of the property towards the discharge of the amount which he is required by the execution to make, including his charges and fees therein, and directing him to pay the overplus, if any, to the assignee, if there be one; and if there be none, then to the clerk of this court."

In this case I decide this, that where an execution is issued on a valid judgment of a state court, and levied by the sheriff upon the property of the judgment debtor, who, intermediate the levy and sale, is adjudged a bankrupt, and the sheriff proceeds to sell the property without restraint from the bankrupt court, and the sale is made for a fair price without fraud, and the proceeds applied to the payment of liens thereon, in the order of their priority, the sale is not void, but valid, and the bankrupt court ought not to set aside the sale and direct the property to be re-sold. In my opinion, therefore, the sale made by the sheriff of Perry county, on the 4th of January, 1869, ought to stand, unless the agreement between themselves, under which the purchasers bought, was fraudulent.

The purpose expressed in this agreement was a proper one, namely, to prevent a sacrifice of the property, and to make it pay as much as possible on the liens. Its object and effect were not to suppress bidding; but, on the contrary, by the union of the means of several persons, bidding was promoted. There was nothing illegal in this arrangement. Phippen v. Stickney, 3 Metc. [Mass.] 387, 388; Kearney v. Taylor, 15 How. [56 U. S.] 494; Smull v. Jones, 1 Watts & S. 128; 1 Sugd. Vend. 17, and notes; Chitty, Cont. 407, note m. I have been unable to find anything in the said agreement of the purchasers, or in their conduct in reference to the sale, that is fraudulent. The sale appears to have been fairly conducted and the property to have brought all that it was reasonably worth.

It seems, from an amendment to the petition of the assignees in the bankrupt court, that after the sale made by the sheriff, on the 4th of January, 1869, to wit: on the 1st day of August, 1870. two parcels of land, containing together twenty-five acres, were sold by the sheriff in Perry county, on an execution on a judgment of Mary Jane Williams against Blunt, issued and levied upon the 17th day of June, 1870. As this property was seized in execution long after the bankruptcy, and appears to have been sold for little more than one-tenth of its value, I think the sale should be set aside.

A period of six months elapsed between the rendition of the decree in the bankrupt court and the filing of the petition in this court to reverse the same. This delay, unless accounted for, I should consider unreasonable, and should have dismissed the petition as coming too late, had there not been

peculiar circumstances in the case, as stated by counsel, which satisfactorily account for the delay. In the meantime, however, the assignees, proceeding to carry out the decree of the bankrupt court, have incurred costs in advertising the sale ordered by that decree. As these costs are the result of the delay of the petitioners, I think the petitioners should pay them, and not the assignees.

A decree will be entered reversing so much of the decree made by the district court sitting in bankruptcy on June 14, 1872, as sets aside the sale made by the sheriff of Perry county on the 4th day of January, 1869, and as directs the said assignees in bankruptcy to resell said real estate, and as directs the defendants in the petition in the bankrupt court to pay to the said assignees the rents since January 4, 1869, for the real estate purchased by them on that day, and as directs the delivery up of possession to said assignees of the real estate so sold on January 4, 1869, and directing all tenants in possession thereof to attorn to said assignees, and as decrees the costs made in said proceedings against the defendants.

The decree will also be against the said assignees for the costs of this case in the district court and in this court, but the petitioners in review will be required to pay the costs incurred by said assignees in advertising the sale of said property, to take place on January 4, 1869.

So much of the decree of the district court as sets aside the sheriff's sale of the property, made on August 1, 1870, and directs said assignees to resell the same, is affirmed.

The injunction heretofore allowed, restraining said assignees from making sale of said real estate sold by the said sheriff on January 4, 1869, and August 1, 1870, or from making any report of sale, or in any manner executing said decree rendered on June 14, 1872, will be continued and made perpetual, except so far as the same relates to and embraces the property sold by said sheriff on August 1, 1870, and, as to that, said injunction is dissolved.