his costs, and each case then depends upon its own circumstances; and the rule of judgment would be to allow costs where the party had a fair or reasonable expectation of recovering more than the limited amount, and to disallow them where it was plainly to be seen that there was no reasonable expectation.

But this section is imperative, and only confers a discretion to go further than the statute goes, by permitting the court, in flagrant cases, to impose an additional penalty for the fraudulent trespass on its jurisdiction by condemning the prevailing party to pay his adversary's costs. So imperative is this statute that even that discretion as to costs which always did belong to a court of equity, but not to a court of law, is taken away in the class of cases denounced by this section.

The argument that the statute only forbids the operation of the rule allowing costs to a prevailing party as a matter of course, and only prevents a taxation, by the clerk in the ordinary course of business, but does not interfere with the power of the court to allow the costs, presupposes the existence of power in the courts to allow costs, which is erroneous. Costs are entirely the creature of statute, in cases at law, at least, and courts cannot grant them inherently. The argument might have some plausibility in an equity court and proceeding, but not in one of law, and the restriction of this statute upon even the powers of a court of equity in that regard is only an indication of its mandatory and rigid rule of exclusion.

The plaintiffs' motion to be allowed costs is overruled. So, also, is the defendant's motion to compel them to pay its costs. The nature of the cause is quite conclusive of her fair and reasonable expectation of recovering more than the limit of the statute. So ordered.

---

### In re BECK.[1]

*(Circuit Court, W. D. Texas. February, 1887.)*

BANKRUPTCY—REVIEW.
Neither the statutes, nor the orders in bankruptcy, nor the rules of the circuit court, prescribe specific delay within which an application for a review must be made, but the adjudged cases declare that the delay must not be unreasonable, nor operate to the prejudice of the parties in interest.

On Petition for Review in Bankruptcy.

PARDEE, J. October 13, 1881, Beck filed his petition for a discharge, and a hearing was ordered. Opposition was made on the twenty-fourth of the same October, to which opposition a demurrer and exceptions were filed January 28, 1882. Two years after this, January 28, 1884, the

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

demurrer and exceptions were sustained, and Beck's petition was referred back to the register for a certificate of conformity. September 17, 1885, the matter seems to have next come before the court, on the opposition of Sampson Heidenheimer, and on his motion; and an order was thereupon entered, denying Beck's application for a discharge on the grounds that Beck was a voluntary bankrupt, and that his assets were not equal to 30 per cent. of his debts; nor had one-fourth in number and one-third in value of his creditors consented. On the following twenty-first of June, 1886, Beck filed a petition to reinstate the case, and for a hearing of his petition for discharge. To this petition a demurrer and exceptions were filed, which, on hearing, August 3d following, were sustained, and the petition for reinstatement dismissed.

It may be noticed that, between the time of the judgment denying the discharge and the filing of the petition for reinstatement, one entire term of the district court had intervened, and no definite reason for the long delay was given. Failing to get a reinstatement in the district court, the bankrupt has petitioned the circuit court to review all the proceedings in the case. The last application to the district court was one wholly addressed to its discretion, and seems to have been refused because the court doubted its power to act after such long delay, and the intervention of another term of court; but, however that may be, the action on this application is not reviewable in the circuit court. See *In re Adler*, 2 Woods, 571. The decree of September 17, 1885, denying the discharge, was the final disposition of the matter, and if the petitioner has the right to a review in the circuit court it dates from that time. Neither the statute, nor the orders in bankruptcy, nor the rules of the circuit court, prescribe specific delay within which an application for a review must be made; but the adjudged cases declare that the delay must not be unreasonable, nor operate to the prejudice of the parties in interest. See *Littlefield* v. *Delaware & H. Canal Co.*, 4 N. B. R. 258; *Bank* v. *Cooper*, 20 Wall. 171; *In re Sutherland*, 2 Biss. 405; *Thames* v. *Miller*, 2 Woods, 564; and see these latter cases as to what is an unreasonable delay.

The delay in the present case has been nine months before aid was sought from the district court, and eleven months before application for review was made to the circuit court. No satisfactory showing is made for this delay. It is true that in the petition for reinstatement, addressed to the district court, is the statement that petitioner did not know of the decree complained of until long after, but there is no definite statement as to when he did first learn of it. In the petition for review no excuse whatever is given for the delay. The said delay was unreasonable.

It is therefore concluded in this case that the application for the review of the proceedings in the said bankruptcy cannot be entertained, so far as the petition for reinstatement addressed to the district court is concerned, because the action thereon was in the discretion of the district court, and is not reviewable, nor so far as the order or decree denying the bankrupt's discharge is concerned, because, as to that order, the application comes to the circuit court unreasonably late. This last con-

clusion is reached with the less trouble, as the proceedings of the applicant, from the first application for a discharge to the last petition, as shown in the petition for review, were dilatory, and well calculated (if not actually intended) to wear out the patience of his creditors.

The said petition for review will be dismissed, with costs.

---

## THOENS v. ISRAEL.[1]

*(Circuit Court, E. D. Louisiana. March 5, 1887.)*

PATENTS FOR INVENTIONS—COMBINATIONS—INFRINGEMENT.

To infringe a patent for a combination, it is necessary to use each member of the combination, or its equivalent, substantially as set forth; and, if the use of less than the whole be an infringement, it is only where the part used, separate and apart from the rest not used, was new and patentable to the inventor.

In Chancery.

*B. R. Forman,* for complainant.

*J. R. Beckwith, A. H. Leonard, Maurice Marks,* and *B. B. Bruenn,* for defendant.

PARDEE, J. The patent in this case purports to be for a combination, in a housing frame for mills, of certain brackets having hollow cylindric pillars, provided with certain feet, caps, bolts, and rods, with certain bed-pieces, substantially and for the purpose set forth. In no sense is it a patent for divided or composite housing, or composite or divided housing frames, for mills. Under the evidence in the case, I am strongly inclined to the opinion that the patent should be held void for want of novelty; but it is not necessary to go into that matter. The evidence does not make a case of infringement. As noticed, the patent is for a combination of certain brackets with certain bed-pieces. To infringe a patent for a combination, it is necessary to use each member of the combination, or its equivalent, substantially as set forth; and, if the use of less than the whole can be an infringement, it is only where the part used, separate and apart from the rest not used, was new and patentable to the inventor. See *Cahoon* v. *Ring,* 1 Fish. Pat. Cas. 397; *Adair* v. *Thayer,* 4 Fed. Rep. 441.

The complainant's evidence in this case shows use by the defendant of brackets, but not of the specific kind, nor in combination, as described in the patent. The complainant and his witnesses seem to have been laboring under the impression that his patent was for divided housings, or housing frames, and their evidence goes no further than to show that the housings in defendant's mill were in separate pieces, and no one of them is able to specify any particular part of complainant's combination

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.